IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| ATC HEALTHCARE SERVICES, LLC )<br>1983 Marcus Avenue, Suite E-122 )<br>Lake Success, NY 22042 )<br>)<br>    Plaintiff, )<br>)<br>    -vs- )<br>)<br>FRONTLINE HEALTHCARE )<br>STAFFING, LLC )<br>c/o MGGM Service Corporation, S/A )<br>1001 Lakeside Ave. E., Suite 1400 )<br>Cleveland, OH 44114 )<br>)<br>    -and- )<br>)<br>CONTINUING HEALTHCARE )<br>SOLUTIONS, INC. )<br>c/o Benjamin J. Parsons, S/A )<br>5890 Venture Drive, Suite D )<br>Dublin, OH 43017 )<br>)<br>    -and- )<br>)<br>BOARDMAN SKILLED NURSING, )<br>LLC d/b/a CONTINUING )<br>HEALTHCARE OF BOARDMAN )<br>c/o Benjamin J. Parsons, S/A )<br>5890 Venture Drive, Suite D )<br>Dublin, OH 43017 )<br>)<br>    -and- )<br>)<br>LISBON SKILLED NURSING AND )<br>RESIDENTIAL CARE, LLC d/b/a )<br>CONTINUING HEALTHCARE OF )<br>LISBON )<br>c/o Benjamin J. Parsons, S/A )<br>5890 Venture Drive, Suite D )<br>Dublin, OH 43017 )<br>) | CASE NO. _____<br><br>JUDGE _____<br><br><br>**COMPLAINT** |

1

| | |
|---|---|
| -and- | ) |
| | ) |
| MINERAL RIDGE SKILLED NURSING | ) |
| AND RESIDENTIAL CARE, LLC d/b/a | ) |
| CONTINUING HEALTHCARE AT THE | ) |
| RIDGE | ) |
| c/o Benjamin J. Parsons, S/A | ) |
| 5890 Venture Drive, Suite D | ) |
| Dublin, OH 43017 | ) |
| | ) |
| -and- | ) |
| | ) |
| NILES RESIDENTIAL CARE, LLC d/b/a | ) |
| THE SUITES AT CONTINUING | ) |
| HEALTHCARE OF NILES | ) |
| c/o Benjamin J. Parsons, S/A | ) |
| 5890 Venture Drive, Suite D | ) |
| Dublin, OH 43017 | ) |
| | ) |
| -and- | ) |
| | ) |
| NILES SKILLED NURSING, LLC d/b/a | ) |
| CONTINUING HEALTHCARE OF | ) |
| NILES | ) |
| c/o Benjamin J. Parsons, S/A | ) |
| 5890 Venture Drive, Suite D | ) |
| Dublin, OH 43017 | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

Plaintiff, ATC Healthcare Services, LLC ("Plaintiff"), by and through undersigned counsel, sues Defendants, Frontline Healthcare Staffing LLC ("Frontline"); Continuing Healthcare Solutions, Inc. ("CHS, Inc."); Boardman Skilled Nursing, LLC, d/b/a Continuing Healthcare of Boardman ("CHS Boardman"); Lisbon Skilled Nursing and Residential Care, LLC, d/b/a Continuing Healthcare of Lisbon ("CHS Lisbon"); Mineral Ridge Skilled Nursing and Residential Care, LLC, d/b/a Continuing Healthcare at The Ridge ("CHS Ridge"); Niles Residential Care,

2

LLC, d/b/a The Suites at Continuing Healthcare of Niles ("CHS Suites"); and Niles Skilled Nursing, LLC, d/b/a Continuing Healthcare of Niles ("CHS Niles"), and states as follows:

## Parties and Jurisdiction

1. At all times relevant to this Complaint, Plaintiff was a Georgia limited liability company with its principal place of business in the State of New York. Plaintiff is a skilled nursing staffing agency, which provided nurses and other healthcare professionals to hospitals and other facilities, including nursing homes and assisted living facilities.

2. At all times relevant to this Complaint, Defendant Frontline was an Ohio limited liability company which, according to its website, had its principal place of business at 5890 Venture Drive, Dublin, OH 43017. Frontline purported to be an independent company which similarly provided contract healthcare professionals to such facilities.

3. At all times relevant to this Complaint, Defendant CHS, Inc. was an Ohio corporation with its principal place of business at 2875 Center Road, Suite 6, Brunswick, OH 44212. Upon information and belief, CHS Inc. was at all relevant times in the business of operating a large network of nursing homes, which did business in the form of limited liability companies wholly owned and/or controlled by CHS, Inc.

4. At all times relevant to this Complaint, Defendant CHS Boardman was an Ohio limited liability company which operated a nursing home and/or assisted living facility located at 830 Boardman-Canfield Road, Boardman, OH 44512. Upon information and belief, CHS Boardman was at all relevant times a wholly-owned and/or controlled subsidiary of CHS, Inc.

5. At all times relevant to this Complaint, Defendant CHS Lisbon was an Ohio limited liability company which operated a nursing home and/or assisted living facility located at 100

3

Vista Drive, Lisbon, OH 44432. Upon information and belief, CHS Lisbon was at all relevant times a wholly-owned and/or controlled subsidiary of CHS, Inc.

6. At all times relevant to this Complaint, Defendant CHS Ridge was an Ohio limited liability company which operated a nursing home and/or assisted living facility located at 3379 Main Street, Mineral Ridge, OH 44440. Upon information and belief, CHS Ridge was at all relevant times a wholly-owned and/or controlled subsidiary of CHS, Inc.

7. At all times relevant to this Complaint, Defendant CHS Suites was an Ohio limited liability company which operated a nursing home and/or assisted living facility located at 2567 Niles-Vienna Road, Niles, H 44446. Upon information and belief, CHS Suites was at all relevant times a wholly-owned and/or controlled subsidiary of CHS, Inc.

8. At all times relevant to this Complaint, Defendant CHS Niles was an Ohio limited liability company which operated a nursing home and/or assisted living facility located at 2565 Niles-Vienna Road, Niles, OH 44446. Upon information and belief, CHS Boardman was at all relevant times a wholly-owned and/or controlled subsidiary of CHS, Inc.

9. Atty. Benjamin J. Parsons is registered with the Supreme Court of Ohio as the President of CHS, Inc., with an office address of 5890 Venture Drive, Suite D, Dublin, OH 43017. This is also the address at which he is registered with the Ohio Secretary of State as statutory agent for CHS, Inc., CHS Boardman, CHS Lisbon, CHS Ridge, CHS Suites and CHS Niles. It is also the address from which Frontline purported to operate.

10. CHS Boardman, CHS Lisbon, CHS Ridge, CHS Suites and CHS Niles are each hereinafter a "CHS Facility" and collectively the "CHS Facilities." Together with CHS, Inc., they are hereinafter collectively the "CHS Defendants."

4

11. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because: (a) there is complete diversity of citizenship between the Plaintiff and Defendants; (b) this is a civil action in which the amount in controversy exceeds $75,000.00, exclusive of interest and costs; and/or (c) by consent of the parties to the contract at issue.

12. Defendants are subject to personal jurisdiction in the State of Ohio because, among other things: (a) the Defendants' principal places of business are located in the State of Ohio; (b) Defendant Frontline entered into, and breached, the contract described herein in the State of Ohio; (c) Plaintiff provided the staffing services described herein in the State of Ohio; (d) each Defendant committed one or more tortious acts in the State of Ohio; and/or (e) by consent of the parties to the contract at issue.

13. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Ohio, and/or by consent of the parties to the contract at issue.

## General Allegations

14. On or about August 13, 2021, Plaintiff and Defendant Frontline entered into a certain Subcontractor Staffing Vendor Agreement ("Agreement"), a true and accurate copy of which is attached hereto as "Exhibit A."

15. The Agreement provided that it should be interpreted, construed and enforced in accordance with and governed by Ohio law, and that disputes arising under it should be resolved either in Cuyahoga County, Ohio Common Pleas Court or "federal courts situated in the Northern District of Ohio." The Agreement provided that these courts should have exclusive subject matter jurisdiction, and personal jurisdiction over the parties.

16. Prior to the execution of the Agreement, Plaintiff had provided contract healthcare professionals to various CHS Facilities, pursuant to contracts directly between Plaintiff and each respective CHS Facility.

17. In the Agreement, Frontline represented that it had entered into a Master Service Agreement with an entity identified only as "CHS" to "provide staffing services … on an exclusive basis and coordinate the provision of such services by other staffing firms …"

18. The Agreement specified that Frontline was to exclusively provide and/or coordinate these services for "CHS" at all the facilities listed in Exhibit A to the Agreement.

19. Exhibit A to the Agreement consisted of a list of more than thirty "Covered Locations," including all five of the CHS Facilities named in this Complaint. In this context, it is clear that the reference to "CHS" in the Agreement refers to CHS, Inc.

20. In the Agreement, Plaintiff agreed, at Frontline's request and subject to CHS, Inc.'s approval if needed, to use best efforts to supply Frontline with qualified registered nurses, licensed professional nurses, certified nursing assistants and other temporary healthcare personnel to work in the CHS Facilities. These individuals were always to be Plaintiff's employees, working in the CHS Facilities.

21. The Agreement also provided that "[CHS, Inc.'s] and/or a [CHS Facility's] signature or other form of approval on [Plaintiff's] timesheets or other reporting system certifies that the hours shown are correct and that the work was performed to [CHS, Inc.'s] satisfaction."

22. The Agreement also sets forth the billing and payment terms by which Plaintiff would be compensated for its employees' work. Rather than contracting with each CHS Facility individually and being paid by them, Plaintiff would be subject to this single Agreement with Frontline.

23. Invoices were to be submitted to Frontline, rather than CHS, Inc. or the individual CHS Facilities, and to be paid by Frontline. A five (5) percent management and administrative fee would be paid to Frontline, and invoices were to be paid within fifteen (15) days after Frontline received payment from CHS, Inc. and/or the CHS Facility.

24. The Agreement further explicitly provided as follows:

> In the event [CHS, Inc.] does not pay for [Plaintiff's] services within 60 calendar days from the date of an invoice, [Plaintiff] shall then be entitled to seek direct payment from [CHS, Inc.], including taking any reasonable legal action necessary to collect any unpaid invoices. Prior to the commencement of any collection efforts by [Plaintiff] against [Frontline] or [CHS, Inc.], [Plaintiff] shall provide at least 15 calendar days' prior written notice to [Frontline], during which both [Frontline] and [CHS, Inc.] shall have the right to resolve any disputes.

25. Upon information and belief, Frontline did not exist prior to calendar year 2021, when it was formed as an Ohio limited liability company. Nonetheless, this brand-new company somehow secured an exclusive contract to provide temporary staffing to CHS, Inc., a company which owned more than thirty nursing homes and/or assisted living facilities.

26. Upon information and belief, this is because Frontline – a brand-new company operating out of the same small, suburban Dublin office building as the President of CHS, Inc., Benjamin Parsons, is not an independent company at all. It is a front for CHS, Inc. enabling that company to fulfill its staffing needs at a seemingly greater removal from the parent company.

27. In this case, Frontline has attempted to provide a plausibly deniable mechanism to enable CHS, Inc. to avoid paying for Plaintiff's services at all.

28. The Agreement was executed by Plaintiff and Frontline on or about August 13, 2021, upon which Plaintiff provided staffing services to the CHS Facilities as required by the Agreement.

29. Plaintiff provided qualified healthcare professionals to staff the CHS Facilities, as it had in the past, and then invoiced Frontline instead of the CHS Facilities.

30. The CHS Facilities accepted the placement and the work of Plaintiff's employees, and enjoyed all the benefits of their staffing.

31. Authorized representatives of CHS, Inc. and/or the CHS Facilities signed off on employee timesheets, certifying that the hours shown were correct, and that the work was performed to their satisfaction.

32. Frontline occasionally expressed concerns about documentation relating to the professionals provided by Plaintiff, but it never declined the services of any given professional for any given shift, nor did any CHS Facility.

33. As time passed and more and more professionals were sent to staff the CHS Facilities under the Agreement, neither Frontline nor the CHS Facilities paid for the services which Plaintiff provided. Invoices continued to be sent to Frontline but were not paid.

34. Finally, on or about March 21, 2022, counsel for Frontline sent a letter to Plaintiff purporting to terminate the Agreement for an alleged breach thereof by Plaintiff. A true and accurate copy of this letter is attached hereto as "Exhibit B."

35. Various rationales for termination of the Agreement were advanced in this letter. This termination, and the specious rationales for it, are not the primary subject of this lawsuit. They largely centered around the documentation issues which had been informally raised before, but which had never prevented Frontline or any CHS Facility from accepting the benefit of Plaintiff's staffing of the Facilities.

36. The letter also made clear that Frontline was terminating the Agreement "immediately upon completion of all current assignments currently filled by Assigned Personnel (as defined in the Agreement)."

37. Further, the letter made equally clear that "[a]ny Assigned Personnel currently engaged in an assignment as of the date of this letter shall fulfill their current assignment(s)."

38. Plaintiff's employees did so, and then ceased to staff the CHS Facilities.

39. Payment for Plaintiff's outstanding invoices was not made then, or at any time since, even for the shifts which Frontline insisted be completed while it was wrongfully terminating the Agreement.

40. Plaintiff has not received payment for thousands of hours of staffing services provided by many of Plaintiff's employees at the CHS Facilities between the execution of the Agreement and its termination.

41. Rather, CHS, Inc., the CHS Facilities and Frontline have acted in concert to divert the services of Plaintiff's employees, worth hundreds of thousands of dollars, to the CHS Facilities for no payment at all.

42. Upon information and belief, **all** the Defendants in this case, including Frontline, are simply wholly owned and/or controlled subsidiaries or affiliates of CHS, Inc., acting at its direction.

43. Acting in concert, these Defendants have enjoyed the benefit of thousands of hours of Plaintiff's employees' time at a group of nursing homes during a global pandemic, for which Plaintiff is entitled to be compensated – and has not been due to their wrongful acts.

44. The unpaid obligations of Defendants to Plaintiff total nearly $700,000.00 in principal amount, for which Plaintiff has made unsuccessful demands for payment.

## COUNT ONE – BREACH OF CONTRACT – FRONTLINE

45. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs one (1) through forty-four (44) above, as if the same were fully rewritten herein.

46. On or about August 13, 2021, Frontline entered into the Agreement with Plaintiff, pursuant to which it agreed to pay Plaintiff for all staffing services which Plaintiff and/or its employees provided at the CHS Facilities.

47. Plaintiff performed all of its obligations under the Agreement from on or about August 13, 2021, until it was excused from further performance by Frontline's unilateral and unjustified termination of the Agreement on or about March 21, 2022.

48. From on or about August 13, 2021 forward, Frontline breached the Agreement by failing to pay Plaintiff for the staffing services provided by Plaintiff and/or its employees at the CHS Facilities.

49. Plaintiff has been damaged as a proximate result of Frontline's breach of the Agreement, in an amount in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00).

## COUNT TWO – BREACH OF CONTRACT – ALL CHS DEFENDANTS

50. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs one (1) through forty-nine (49) above, as if the same were fully rewritten herein.

51. On or before August 13, 2021, the CHS Defendants entered into a Master Agreement with Frontline, by which they authorized Frontline to act as their exclusive agent and/or representative with respect to temporary staffing at the CHS Facilities.

52. On or about August 13, 2021, pursuant to the CHS Defendants' authorization, Frontline entered into the Agreement with Plaintiff, which provided that the CHS Defendants would be liable for Plaintiff's unpaid invoices under certain conditions.

53. Because the CHS Defendants accepted all the benefit of the services provided by Plaintiff pursuant to this Agreement, they are estopped from denying the validity of the provisions holding them liable for Plaintiff's unpaid invoices, which they ratified by their acceptance of Plaintiff's services.

54. The Agreement provided that either Frontline or the CHS Defendants would pay Plaintiff for all staffing services which Plaintiff and/or its employees provided at the CHS Facilities.

55. Plaintiff performed all of its obligations under the Agreement from on or about August 13, 2021, until it was excused from further performance by Frontline's unilateral and unjustified termination of the Agreement on or about March 21, 2022.

56. From on or about August 13, 2021 forward, the CHS Defendants breached the Agreement by failing to pay Plaintiff for the staffing services provided by Plaintiff and/or its employees at the CHS Facilities.

57. Plaintiff is unable to determine after reasonable investigation whether the CHS Defendants paid Frontline for Plaintiff's services. If the CHS Defendants did not, then the conditions under which the CHS Defendants would be held liable for Plaintiff's unpaid invoices have been met.

58. Plaintiff has been damaged as a proximate result of the CHS Defendants' breach of the Agreement, in an amount in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00).

**COUNT THREE – PROMISSORY ESTOPPEL – ALL DEFENDANTS**

59. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs one (1) through fifty-eight (58) above, as if the same were fully rewritten herein.

60. The actions of the Defendants as set forth above constitute a promise, clear and unambiguous in its terms, that Plaintiff would be compensated for any services provided by Plaintiff and/or its employees at the CHS Facilities.

61. Plaintiff relied upon this promise in dedicating the time and expertise of many employees for thousands of hours during a global pandemic.

62. Said reliance was reasonable and foreseeable, and specifically known to the Defendants, as they staffed the CHS Facilities with Plaintiff's employees, signed off on their timesheets, and collected unpaid invoices for months without ever rejecting an employee of Plaintiff.

63. Plaintiff has been damaged as the direct and proximate result of the Defendants' breach of this promise, upon which Plaintiff reasonably and detrimentally relied in dedicating the time and effort of many of Plaintiff's employees who could have been staffing facilities which actually pay their bills, losing profits that would have been generated by such work, and lost opportunities to seek out and take on assignments for which Plaintiff would have been compensated.

64. Plaintiff has been damaged as a proximate result of the Defendants' acts and omissions in this regard, in an amount in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00).

## COUNT FOUR – UNJUST ENRICHMENT – ALL DEFENDANTS

65. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs one (1) through sixty-four (64) above, as if the same were fully rewritten herein.

66. Plaintiff's services and work conferred a benefit upon one or more of the Defendants.

67. The Defendants had knowledge of and took full advantage of the benefits conferred on them by Plaintiff.

68. It would therefore be unjust for the Defendants to retain these benefits, bestowed upon them due to the work of Plaintiff's employees, without payment to Plaintiff for the work performed.

69. Defendants have been unjustly enriched at Plaintiff's expense in an amount in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00), for which Plaintiff is entitled to compensation.

## **COUNT FIVE – ALTER EGO – CHS, INC.**

70. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs one (1) through sixty-nine (69) above, as if the same were fully rewritten herein.

71. Defendant CHS, Inc. maintained its ultimate authority over the other Defendants at all times relevant to this Complaint. All relevant acts of Frontline and/or the CHS Facilities were performed at the direction of CHS, Inc.

72. Control over Frontline and/or the CHS Facilities by CHS, Inc. was so complete that Frontline and/or the CHS Facilities had no separate mind, will or existence of their own.

73. Control over Frontline and/or the CHS Facilities by CHS, Inc. was exercised in such a manner as to commit fraud, an illegal act, or other unlawful act.

74. Injury and/or unjust loss proximately resulted to Plaintiff from such control and wrongdoing, in an amount in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00), for which Plaintiff is entitled to compensation.

## COUNT SIX – IMPLIED CONTRACT/QUANTUM MERUIT – ALL DEFENDANTS

75. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs one (1) through seventy-four (74) above, as if the same were fully rewritten herein.

76. The actions of Plaintiff and Defendants as described herein manifest the formation of a contract implied in fact: an offer by Plaintiff, an acceptance by the Defendants, and consideration.

77. A meeting of the minds between Plaintiff and Defendants occurred, and the contract so formed was definite in its essential terms.

78. At the time of rendering the services and performing the work, Plaintiff had reason to expect compensation at a later date from one or more Defendants.

79. The services rendered by Plaintiff, and the work performed by Plaintiff's employees, were such that people as a rule expect to pay and be paid for, and were knowingly and voluntarily accepted by Defendants.

80. Defendants requested the services be rendered and the work performed, under circumstances negativing any inference that said work and services would be gratuitous.

81. The services and work were performed in a skillful and workmanlike manner.

82. To the extent that further services and work promised were not completed by Plaintiff, this was because Plaintiff was prevented from performing further services and work by the unilateral act of the Defendants in canceling the arrangement.

83. Considerations of natural justice therefore dictate that Defendants cannot conscientiously retain the benefits of Plaintiff's labor without making just compensation, and Plaintiff is entitled to recover the value of its performance through payment of the reasonable value

of that performance, in an amount in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00).

## COUNT SEVEN – COMPLAINT ON ACCOUNT

84. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs one (1) through eighty-three (83) above, as if the same were fully rewritten herein.

85. Defendants are jointly and severally liable to Plaintiff upon an account, a true and accurate copy of which is attached hereto as "Exhibit C," for the sum of Six Hundred Ninety-Two Thousand Four Hundred Five and 09/100 Dollars ($692,405.09), plus interest.

WHEREFORE, Plaintiff respectfully demands judgment in its favor and against Defendants, jointly and severally, in an amount in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00), plus interest and costs, plus such other legal and equitable relief as this honorable Court deems just and proper.

Date: February 28, 2023            Respectfully submitted,

                                   **HENDERSON, COVINGTON, MESSENGER,
                                   NEWMAN & THOMAS CO., L.P.A.**


                                   /s/ J. Michael Thompson
                                   RICHARD J. THOMAS (#0038784)
                                   J. MICHAEL THOMPSON (#0077478)
                                   6 Federal Plaza Central, Suite 1300
                                   Youngstown, OH 44503
                                   Telephone:   (330) 744-1148
                                   Facsimile:   (330) 744-3807
                                   Email: rthomas@hendersoncovington.com
                                   Email: mthompson@hendersoncovington.com
                                   *Counsel for Plaintiff*

15