UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ATC HEALTHCARE SERVICES, LLC, | ) |
| Plaintiff, | ) CASE NO. 1:23-CV-00392 )  |
| v. | ) JUDGE CHARLES E. FLEMING ) |
| FRONTLINE HEALTHCARE STAFFING, LLC, *et al.*, | ) MEMORANDUM OPINION AND ) ORDER ) |
| Defendants | ) ) |

Before the Court is Defendants Frontline Healthcare Staffing, LLC, ("Frontline") Continuing Healthcare Solutions, Inc. ("CHS, Inc."), Boardman Skilled Nursing, LLC, Lisbon Skilled Nursing and Residential Care, LLC, Mineral Ridge Skilled Nursing and Residential Care, LLC, Niles Residential Care, LLC, and Niles Skilled Nursing, LLC (collectively, "Defendants") partial motion to dismiss Plaintiff ATC Healthcare Services, LLC's ("Plaintiff") first amended complaint ("Complaint"). For the reasons below, Defendants' partial motion to dismiss is **GRANTED** in part and **DENIED** in part.

I.      FACTUAL BACKGROUND

Plaintiff is a staffing agency that provides nurses and other healthcare professionals to hospitals and similar facilities, including nursing homes and assisted living facilities. (ECF No. 34, PageID #255, ¶ 1). Defendant Frontline is a healthcare staffing solutions provider that similarly connects healthcare professionals with employers in long-term care and acute care facilities. (ECF No. 36, PageID #314; ECF No. 34, PageID #256, ¶ 2). Defendant CHS, Inc. operates several different facilities, including Defendants Boardman Skilled Nursing, LLC, Lisbon Skilled Nursing and Residential Care, LLC, Mineral Ridge Skilled Nursing and Residential Care, LLC, Niles Residential Care, LLC, and Niles Skilled Nursing, LLC (collectively, "CHS Facilities"). (ECF

1

No. 36, PageID #256–57, ¶¶ 3–8). On August 13, 2021, Plaintiff and Defendant Frontline entered into a Subcontractor Staffing Vendor Agreement ("Agreement") by which Plaintiff would "supply [Defendant Frontline] with qualified registered nurses … and other temporary healthcare personnel … to perform the Staffing Services for [CHS]."[1] (ECF No. 34-1, PageID #280). The Agreement stated that Frontline "entered into a Master Service agreement … with CHS … to provide staffing services … on an exclusive basis … to meet [CHS's] temporary staffing needs" at Defendant CHS Facilities. (*Id.*). Before Plaintiff and Defendant Frontline executed the Agreement, Plaintiff provided healthcare professionals to various facilities of CHS, Inc. under individual contracts between Plaintiff and the individual facilities. (ECF No. 34, PageID #258, ¶ 16).

Plaintiff submitted invoices to and received payment from Defendant Frontline, rather than Defendant CHS, Inc. or Defendants CHS Facilities. (*Id.* at PageID #259, ¶ 23). Under the Agreement, Plaintiff submitted weekly invoices to Defendant Frontline, "CHS" paid Defendant Frontline, and within fifteen days of receiving payment from "CHS," Defendant Frontline paid Plaintiff. (ECF No. 34-1, PageID #285, ¶ VI(b)-(d)). If "CHS" failed to pay Defendant Frontline for Plaintiff's services, Plaintiff was entitled to seek direct payment from "CHS." (*Id.* at ¶ VI(e)). Defendant Frontline was not liable for any invoices which "CHS" did not pay. (*Id.* at ¶ VI(f)). Plaintiff alleges that Defendants have not compensated Plaintiff for nearly $700,000.00 worth of services under the Agreement, which is the subject of this lawsuit. (ECF No. 34, PageID #263, ¶¶ 43–44).

---

[1] The Agreement identifies "CHS" as the "Client" referred to throughout. (ECF No. 34-1). Plaintiff asserts that "CHS" refers to Defendant CHS, Inc. (ECF No. 31, PageID #259, ¶ 19). At this stage in the proceeding, the Court will not opine on which entity is intended to be "CHS."

## II. PROCEDURAL HISTORY

On September 5, 2024, Plaintiff filed its first amended complaint. (ECF No. 34). On September 26, 2024, Defendants moved for partial dismissal of Plaintiff's amended complaint. (ECF No. 36). Plaintiff opposed Defendants' motion to dismiss. (ECF No. 38). Defendants replied in support of their motion. (ECF No. 39).

## III. LEGAL STANDARD

As an initial matter, Plaintiff argues that Defendant's partial motion to dismiss is a "second bite at the same apple" to re-litigate an issue addressed by the Court's Memorandum Opinion and Order issued on September 3, 2024, in which the Court granted Plaintiff's motion for leave to file an amended complaint. (ECF No. 38, PageID #347; ECF No. 33). In that order, the Court rejected Defendant's argument that amendment of the complaint, including claims for fraud, fraud in the inducement, and civil conspiracy, would be futile. (ECF No. 33, PageID #251–53). The Court conducted a limited analysis based on the arguments and case law presented as to whether Plaintiff should be granted leave to file an amended complaint. (*Id.*). The Court held Plaintiff's proposed claims for fraud and fraudulent inducement "*could* withstand a 12(b)(6) motion" so the amendment was not futile. (ECF No. 33, PageID #252) (emphasis added).[2] Because the Court concluded that the underlying fraud claims were not futile, it likewise rejected Defendant's argument for futility of the civil conspiracy claim. (*Id.* at PageID #253).

Nonetheless, when considering a motion to amend, the Court is directed that leave should be freely given unless clearly futile. *See* Fed. Civ. R. 15(a)(2) ("The court should freely give leave when justice so requires."); *see also Adam v. Kan. Wesleyan Univ.*, No. 95-1473-JTM, 1996 WL

---

[2] Plaintiff alleges that the Court denied Defendant's argument that leave to amend be denied for futility because "the new claims would not survive a motion to dismiss." (ECF No. 38, PageID #351). This is incorrect; the Court stated that Plaintiff's claims "could" survive a motion to dismiss under Federal Rule 12(b)(6), which is not the same as saying Plaintiff's claims "would" survive.

3

148574, at *1 (D. Kan. Mar. 5, 1996)  ("[T]he court may deny a motion to amend when the desired change clearly is frivolous or advances a claim that is legally insufficient on its face, but if a proposed amendment is not clearly futile, then denial of leave to amend is improper.") (internal quotation marks and citation omitted); *Gentry v. Chubb*, No. 21-CV-13744, 2022 WL 5242298, at *5 (D.N.J. Oct. 6, 2022) ("Importantly, however, futility arguments differ from 12(b)(6) dismissal arguments in that when considering futility, courts place a heavy burden on opponents who wish to declare a proposed amendment futile.") (internal quotation marks and citation omitted).  The same cannot be said regarding the motion to dismiss standard under Federal Rule 12(b)(6).

To survive a Federal Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The "complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Com. Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).  In assessing plausibility, the Court construes factual allegations in the complaint in the light most favorable to Plaintiff, accepts the allegations of the complaint as true, and draws all reasonable inferences in Plaintiff's favor. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

IV.	ANALYSIS

Defendants argue that this Court should dismiss Counts 5, 8, 9, and 10 under Federal Rule 12(b)(6). (ECF No. 36, PageID #313).[3] The Court will address each count in turn.

### A. Fraud in the Inducement (Count 8) and Fraud (Count 9)

As to Plaintiff's fraud-based claims, Plaintiff alleges that Defendants falsely presented Defendant Frontline to Plaintiff as an independent outside company, which induced Plaintiff to enter the Agreement. (ECF No. 34, PageID #263, ¶¶ 46–48). Defendants argue that the Court should dismiss Plaintiff's claims of fraudulent inducement, fraud, and civil conspiracy because (1) Plaintiff fails to allege a prima facie fraud claim, and (2) Plaintiff does not allege non-contractual duties or actual damages beyond those attributable to Plaintiff's breach of contract claim. (ECF No. 36, PageID #317–325). Plaintiff counters that (1) Defendants' argument that the fraud claims require a duty to disclose which Plaintiff has not pled lacks merit, (2) Plaintiff pled with particularity, (3) several of Defendants' arguments are inappropriate at the motion to dismiss stage, and (4) Defendants' arguments about non-contractual duties or damages contradict the pleadings and are based on false premises. (ECF No. 38, PageID #350–57).

The law demonstrates, and the parties concede, that the elements of fraud and fraud in the inducement are essentially the same. (ECF No. 29, PageID #226–27). To plead fraud or fraud in the inducement, a plaintiff must allege (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon

---

[3] The Court notes that in Defendants' motion to dismiss, they initially mistakenly list count six instead of count five (ECF No. 36, PageID #313), but this is corrected to count five later in the document. (*Id.* at PageID #325–26). Thus, the Court is not construing Defendants' motion as a request to dismiss count six.

5

it; (5) justifiable reliance on the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Magical Farms, Inc. v. Land O'Lakes, Inc.,* 356 F. App'x 795, 803 (6th Cir. 2009). Ohio law generally prohibits tort claims that stem from contract disputes. *Popovich v. Sony Music Entm't, Inc.*, No. 1:02CV359, 2005 WL 8171846, at *12 (N.D. Ohio Feb. 10, 2005) (citing *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981)). "A tort action arising out of a breach of contract claim is permitted when two requirements are met: (1) if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed; and (2) the fraud action must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are *in addition* to those attributable to the breach." (internal quotation marks and citations omitted) (emphasis in original)).

In other words, even if a plaintiff pleads a duty owed separately from the contract to support a tort claim, any damages for the tort claim must be separate and distinct from the damages plead on the breach of contract claim. *Princeton Radiology Assocs., PA v. Advoc. Radiology Billing & Reimbursement Specialists, LLC*, No. 2:19-CV-2311, 2020 WL 13328763, at *5 (S.D. Ohio Mar. 5, 2020). "Ohio law goes further by requiring that fraud damages be limited to the injury actually arising from the fraud. The tort injury must be unique and separate from any injury resulting from a breach of contract." *Med. Billing, Inc. v. Med. Mgmt. Scis., Inc.*, 212 F.3d 332, 338 (6th Cir. 2000) (citing *Davison Fuel & Dock Co. v. Pickands Mather & Co.*, 376 N.E.2d 965, 968 (Ohio Ct. App. 1977)). Fraud damages that are independent of contract damages are typically reliance or forbearance damages (*e.g.*, lost opportunity costs). *See Popovich*, 2005 WL 8171846, at *13. Punitive damages do not establish the necessary, independent tort-based damages. *Mitsui Sumitomo Ins. Co. of Am. v. Vertiv Corp.*, No. 2:23-CV-1398, 2024 WL 962742, *4 (S.D. Ohio March 5, 2024). Thus, a tort claim may be dismissed at the pleadings stage if the plaintiff fails to

specify damages that are separate and distinct from those claimed in the breach of contract claim. *E.g.*, *Princeton Radiology Assocs.*, 2020 WL 13328763, at *5 (dismissing a fraudulent inducement claim for failure to allege separate and distinct damages where plaintiffs alleged only generic "damages" from the tort, and the complaint identified no damages beyond those arising from the alleged breach of contract); *MISC Berhad v. Advanced Polymer Coatings, Inc.*, No. 14:CV-1188, 2014 WL 5038001, at *2 (N.D. Ohio Oct. 8, 2014) (dismissing fraudulent inducement claim because plaintiff failed to allege "a separate injury from its breach of contract claim."); *Polytec Internacional, S.A. v. Artco Glob. Grp., LLC*, No. 23-CV-480, 2023 WL 8600575, at *3 (S.D. Ohio Sept. 6, 2023) (dismissing fraud claim because plaintiff "fail[ed] to allege any damages separate and distinct from the damages arising from the breach of contract claim").

Here, even if Plaintiff pled a duty owed separately from the contract, Plaintiff fails to allege damages separate and distinct from the breach of contract claims. Plaintiff alleges that "Defendants presented Frontline to Plaintiff as an independent outside company" which "induced Plaintiff to enter into the Agreement." (ECF No. 34, PageID #263, ¶¶ 47, 48). Plaintiff further alleges that "the Agreement was fraudulently designed by Defendants to allow Frontline to obtain Plaintiff's services for the benefit of the CHS Defendants and fraudulently withhold payment from Plaintiff by claiming that Frontline had not been paid by CHS Defendants." (*Id.* at ¶¶ 48). Put simply, Plaintiff's theory of fraud and fraudulent inducement is that Defendants promised to pay Plaintiff for services under the Agreement but never intended to pay. (ECF No. 34, PageID #260, ¶¶ 27, 41, 43) ("Frontline has been fraudulently used to provide a plausibly deniable mechanism to enable CHS, Inc. to avoid paying for Plaintiff's services at all."); ("Rather, CHS, Inc., the CHS Facilities, and Frontline have acted in concert to divert the services of Plaintiff's employees, worth hundreds of thousands of dollars, to the CHS Facilities for no payment at all."); ("Acting in

7

concert, these Defendants have enjoyed the benefit of thousands of hours of Plaintiff's employees' time … for which Plaintiff is entitled to be compensated – and has not been due to their wrongful acts."). Plaintiff failed to allege any loss of opportunity or other forms of reliance or forbearance damages. *Popovich*, 2005 WL 8171846, at *13.

Instead, Plaintiff alleges that Defendants created Frontline as a mechanism to avoid payment for Plaintiff's services under the Agreement. But this is the same injury alleged under Plaintiff's breach of contract claims in Counts One and Two of the Complaint. (ECF No. 34, PageID #270–71, ¶¶ 88, 94) ("Frontline breached the Agreement by failing to pay Plaintiff for the staffing services provided by Plaintiff and/or its employees at the CHS Facilities."); ("The Agreement provided that either Frontline or the CHS Defendants would pay Plaintiff for all staffing services which Plaintiff and/or its employees provided at the CHS Facilities."). Plaintiff accurately states that it need not show *proof* of separate damages at the pleadings stage. (ECF No. 38, PageID #354). But here, Plaintiff failed to even plead such allegations. Thus, Plaintiff's claims for fraud and fraudulent inducement are **DISMISSED WITHOUT PREJUDICE**.

### B. Civil Conspiracy (Count 10)

Plaintiff states that its civil conspiracy claim is premised on and its viability "rises and falls" with its fraudulent inducement and fraud claims. (ECF No. 38, PageID #352). The Court agrees. "An underlying tort is necessary to give rise to a cause of action for conspiracy." *Stiles v. Chrysler Motors Corp.*, 624 N.E.2d 238, 244 (Ohio Ct. App. 1993). Absent the underlying tort, a civil conspiracy claim fails. *See Adams v. Margarum*, No. 16AP-515, 2017 WL 1902017, at *3 (Ohio Ct. App. May 9, 2017) ("Having concluded that the complaint fails to state a claim for fraud, the derivative claim of civil conspiracy must fail also."). Accordingly, Plaintiff's civil conspiracy

claim cannot survive without the underlying fraud claims, so it is similarly **DISMISSED WITHOUT PREJUDICE**.

### C. Piercing the Corporate Veil (Count 5)

Defendants also seek dismissal of Plaintiff's claim for piercing the corporate veil because piercing the corporate veil is not a claim, it is a remedy encompassed within a claim, whereby the Court may impose liability for a tort on an individual. (*Id*. at PageID #325). Plaintiff also argues that it is required to plead vicarious liability/piercing the corporate veil regardless of whether it is a distinct claim under Ohio law. (*Id*. at PageID #358).

Some courts allow claims for piercing the corporate veil to pass the motion to dismiss stage, while others dismiss them because a claim for piercing the corporate veil is a theory of recovery, not an independent cause of action. *See Yonkov v. Maximus Holding Grp. LLC*, No. 1:23-CV-1317, 2024 WL 2300967, at *7–8 (N.D. Ohio May 21, 2024) (deciding not to dismiss a piercing the corporate veil cause of action because regardless of whether it is a cause of action or a form of relief, the count put the defendant on notice that plaintiff sought to pierce the corporate veil); *see contra Mike Albert, Ltd. v. 540 Auto Repair, Inc.*, 1:21-CV-286, 2024 WL 1174425, *15 (S.D. Ohio March 19, 2024) (dismissing a claim for piercing the corporate veil because it is not a separate cause of action). The Court finds *Yonkov* persuasive and does not dismiss Count 5 of the Complaint because, regardless of whether it is a cause of action or a form of relief, it places Defendants on notice that Plaintiff seeks to pierce the corporate veil to recover damages.

### V. CONCLUSION

Accordingly, Defendants' partial motion to dismiss is **GRANTED IN PART** with respect to Counts 8, 9 and 10, and **DENIED IN PART** with respect to Count 5.

**IT IS SO ORDERED.**

Date: January 22, 2026

*Charles Fleming*

_____
**CHARLES E. FLEMING
U.S. DISTRICT COURT JUDGE**